# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Belinda Ann McCall,<br><br><br>Debtor(s). | C/A No. 15-05099-JW<br><br>Adv. Pro. No. 16-80008-JW |
| Belinda Ann McCall,<br><br><br>Plaintiff(s),<br><br>v.<br><br>Anderson Brothers Bank,<br><br><br>Defendant(s). | Chapter 13<br><br>**ORDER** |

This matter comes before the Court upon the cross motions for summary judgment filed by Anderson Brothers Bank and Belinda Ann McCall ("Debtor"). Both Anderson Brothers Bank ("Bank") and Debtor filed objections to the opposing party's motion for summary judgment. A hearing was held on the motions, and the Court took the matters under advisement. Pursuant to Fed. R. Civ. P. 56 as made applicable by Fed. R. Bankr. P. 7056, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1.      On November 9, 2013, Minnie L. Yeargin ("Yeargin"), Debtor's stepmother, executed a Retail Installment Sale Contract and associated loan documents for the purchase of a 2012 Toyota Tundra ("Vehicle").  The purchase of the Vehicle was financed by Bank,

---

[1]      The Court notes that to the extent any of the following finding of fact are conclusions of law, they are adopted as such, and vice versa.

and Bank obtained a lien on the Vehicle in exchange for its loan in the amount of $27,784.50. No down payment was made at the time of purchase because the down payment was a rebate. The Vehicle was titled solely in Yeargin's name, and Bank's lien was listed on the Certificate of Title.

2.      Debtor previously testified that, due to her credit not being sufficient to obtain approval to finance the purchase the Vehicle, she and Yeargin reached a verbal agreement whereby Debtor would make all payments related to the Vehicle and title to the Vehicle would be transferred into Debtor's name upon payment in full of the Bank's lien.[2] Debtor was present at the dealership at the time of the Vehicle's purchase, but she did not sign any documents relating to the purchase.

3.      Debtor further testified that she paid all of the Vehicle's taxes and insurance premiums as well as all of the payments that have been received by the Bank on the loan. Debtor indicated that the majority of the payments on the loan were made directly to the Bank by Debtor over the phone. To make these payments, Debtor, with Yeargin's permission, provided Yeargin's social security number to the Bank and used her own credit card.

4.      In her deposition, Debtor stated that she met a representative of the Bank in a parking lot in November 2014 to deliver an insurance proceeds check from Nationwide Insurance, which was made payable to "Minnie Yeargin and Anderson Brothers Bank" and negotiated to the Bank by Yeargin.[3] At that time Debtor also presented $660 in cash, which with the insurance proceed, was used to pay outstanding payments on the loan.

---

[2]      From the record, it does not appear that the Bank's lien has been paid in full at this time.
[3]      A copy of the transcript of Debtor's deposition was submitted as an attachment to the Bank's Motion for Summary Judgment.

5.     All written correspondence sent by the Bank regarding the loan was sent to Yeargin's address. Debtor stated in her deposition that Yeargin would hand deliver to her all of the Bank's correspondence. Further, Debtor stated that all phone communication regarding the loan occurred between Debtor and the Bank, and that Yeargin had no phone communication with the Bank.

6.     During the course of the loan, the parties entered two written Retail Installment Contract Deferral Agreements, which deferred payments on the loan and made the account contractually current. Debtor stated in her deposition that she did not sign these agreements but that she provided them to Yeargin for signature.

7.     Payments on the Vehicle's loan were frequently delinquent. In an attempt to repossess the Vehicle from Yeargin on September 18, 2015, the Bank's records reflect that, Yeargin reported to the Bank's repossession agent that "her child was in possession of the [V]ehicle [and that] she just financed it in her name." The Vehicle was subsequently repossessed from Debtor's residence on September 19, 2015.

8.     On September 24, 2015, Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

9.     On September 25, 2015, Debtor's counsel faxed to the Bank a written request for turnover of the Vehicle, which indicated that Debtor had been making the payments on the loan. Debtor's counsel also faxed a copy of the bankruptcy docket for Debtor's case, a copy of the Certificate of Title showing Yeargin as the title owner and the Bank as lienholder, and a copy of a GEICO insurance card for the Vehicle showing Yeargin as the insured. Debtor was not listed as an insured on the GEICO insurance card.

10.    The Bank, through counsel, responded to Debtor's request for turnover on September 25, 2015, indicating that it would not turn over the Vehicle as it did not have sufficient proof of Debtor's ownership and that the Bank would be filing a motion seeking relief from the automatic stay shortly to adjudicate the ownership issue.

11.    On September 29, 2015, the Debtor's counsel submitted bank statements, which indicated that Debtor had made at least eight payments on the loan, as well as a handwritten affidavit from Yeargin which briefly described the arrangement between Debtor and Yeargin.[4]

12.    Debtor did not file an adversary proceeding or motion with the Bankruptcy Court to establish Debtor's interest in the Vehicle or to seek an order requiring turnover.

13.    The Bank filed on October 2, 2015 a Motion for Relief from the Automatic Stay ("Motion") asserting, among other allegations, that Debtor did not appear to have an interest in the Vehicle. The hearing on the Motion was scheduled for November 3, 2015.

14.    Debtor filed an objection to the Motion on October 16, 2015, indicating that it was Debtor's belief that she has an equitable ownership interest in the Vehicle and that it is part of the bankruptcy estate.

15.    Neither party requested an emergency hearing on the Motion.

16.    A request to continue the November 3, 2015 Motion hearing was filed by Debtor's counsel and counsel for the Bank, which indicated that Debtor's counsel would be out of the country on November 3, 2015. The Court entered an order continuing the hearing to November 17, 2015.

---

[4]    The entirety of Yeargin's sworn statement is as follows: "I Minnie Yeargin Bought a 2012 Toyota Tundra VIN# 5TFRY5F11CX121354 on 11-9-2013 for Belinda McCall and she had made all payments since. After all payments are made the title will go into her name."

4

17.     On the eve of the continued hearing, on November 16, 2015, Debtor's counsel presented counsel for the Bank with a Verification of Coverage from GEICO Insurance showing that Debtor was an insured on the Vehicle. This Verification of Coverage was also submitted into evidence at the November 17, 2015 hearing.

18.     The Court held a hearing on the Motion on November 17, 2015 at which time the parties presented evidence in the matter and the Motion was taken under advisement. On December 3, 2015, the Court issued an Order Denying Relief from Stay, determining that, based on Debtor's testimony and the evidence in the record, Debtor had an equitable interest in the Vehicle as a result of a resulting trust with Yeargin and that Debtor's interest in the Vehicle was part of the bankruptcy estate. The Bank was ordered to respond to the Debtor's turnover request. It appears the Vehicle was turned over to Debtor shortly thereafter.

19.     Debtor, with new counsel, filed a motion to reconsider the Order Denying Relief from Stay on December 17, 2015 because the order had denied Debtor's request that the Bank be precluded from charging attorney's fees related to the Motion.[5] The Bank objected to the motion to reconsider on January 8, 2016, and a hearing was held on January 14, 2016. The Court denied the motion to reconsider on January 14, 2016.

20.     At the Debtor's continued confirmation hearing also on January 14, 2016, the Court determined, upon the recommendation of the Chapter 13 Trustee, that cause existed to dismiss Debtor's bankruptcy case because Debtor was unable to and had not made the payments proposed in her Chapter 13 plan. At that time, Debtor indicated her intention to file the present adversary proceeding. The Court delayed the dismissal of Debtor's bankruptcy case to allow for Debtor to timely file an adversary proceeding.

---

[5]     As part of Debtor's response to the Motion, Debtor requested that the Bank be barred from charging collection costs and attorney's fees according to the loan documents due to the circumstances of the case.

21.    On January 25, 2016, Debtor filed a complaint in the present adversary proceeding, seeking damages based on the Bank's alleged willful violation of the automatic stay resulting from its decision to not turn over the Vehicle upon Debtor's initial request on September 25, 2015.

22.    On January 29, 2016, the Court dismissed Debtor's bankruptcy case but retained jurisdiction to hear the present adversary proceeding.

23.    The Bank filed a timely answer to Debtor's complaint on February 25, 2016. Thereafter, the parties conducted discovery.

24.    On August 15, 2016, the Bank filed its Motion for Summary Judgment. On that same day, Debtor also filed a Motion for Partial Summary Judgment. On August 29, 2016, both parties filed objections to the other party's motion for summary judgment. A hearing was held on the cross motions for summary judgment and the Court took the matters under advisement. At the hearing on the motions, counsel stipulated to the facts in the matter and agreed that the remaining issues were issues of law, making the matter ripe for determination by summary judgment.

<u>CONCLUSIONS OF LAW</u>

The motions for summary judgment center on one issue: whether the Bank's post-petition retention of the Vehicle after Debtor's demand for turnover was a *willful* violation of the automatic stay. Debtor contends that the Bank's knowledge of Debtor's bankruptcy case, together with its intentional act of retaining the Vehicle are sufficient to demonstrate a willful violation of the stay. In contrast, the Bank contends that its actions were not willful because it did not know the automatic stay applied to the Vehicle due to the nature of Debtor's equitable interest, which required evidence, testimony and a hearing to establish.

*Standard for Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, as adopted and applied to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden of demonstrating the absence of a genuine issue of material fact rests on the party seeking summary judgment; this must be accomplished through the moving party's identification of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate such an absence. Celotex, 477 U.S. at 323. The nonmoving party must respond with production of "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–61 (1970). It is insufficient for the nonmoving party to offer only a "scintilla of evidence" that a genuine issue of material fact exists—evidence must be produced on which a jury could reasonably find in their favor. Anderson, 477 U.S. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In reviewing the facts and evidence produced by the parties, the Court must "draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004); see also Tolan v. Cotton, ___ U.S. ___, 134 S. Ct. 1861, 1896 (2014)

7

(holding that lower court failed to "adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party").

In the instant case, cross motions for summary judgment have been filed. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)) (citation and internal punctuation omitted). "[T]he court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Rossignol, 316 F.3d at 523 (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

The parties cross motions for summary judgment center on the legal application of 11 U.S.C. § 362(k)(1) and what constitutes a willful violation of the automatic stay under that section. Section 362(a)(3) provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ." Section 541 establishes the bankruptcy estate and includes, with certain exceptions not applicable to the present matter, "all legal or equitable interests of the debtor in property as of the commencement of the case."

### Procedures for Turnover under *Jennings*

The alleged willful violation of stay is attributed to Bank's failure to immediately turnover the vehicle upon demand by Debtor. Before examining the assertions regarding a violation of the automatic stay, it is helpful to review the turnover procedures established for

cases before the undersigned by the seminal case of <u>Jennings v. R & R Cars and Trucks (In re</u> <u>Jennings)</u>, C/A No. 01-02330-W, Adv. Pro. No. 01-80044-W, slip op., 2001 WL 1806980 (Bankr. D.S.C. Sept. 17, 2001). In <u>Jennings</u>, the Court balanced the debtor's need to recover property of the estate in which the debtor has an interest with the creditor's right to adequate protection of its interest in the repossessed collateral. Id. at 8–12, 2001 WL 1806980 at *4–7.

In short, <u>Jennings</u> prescribed that a debtor would be entitled to immediate turnover of collateral lawfully repossessed pre-petition in which the debtor has an interest upon a written demand for turnover and proof of insurance coverage. <u>Id.</u> at 12, 2001 WL 1806980 at *6. Thereupon, the duty to timely raise adequate protection issues or other circumstances that might defeat the turnover demand would be with the creditor. <u>Id.</u> Turnover should not be delayed unless the creditor simultaneously makes an appropriate expedited request for protection of its interest. <u>Id.</u>

In <u>Jennings</u>, the debtor initiated an emergency request for turnover proceeding in the Bankruptcy Court, and there was no issue regarding the sufficiency of the debtor's property interest in the repossessed vehicle. The same in not true in the present matter. On September 25, 2015, the day after Debtor filed her bankruptcy petition, Debtor's counsel faxed a written request for turnover to the Bank, which included a copy of Debtor's court docket and a GEICO insurance card for the Vehicle. However, both the Certificate of Title and insurance information demonstrated that the party with the ownership interest in the Vehicle was Yeargin, not Debtor.

That same day, counsel for the Bank advised Debtor's counsel that it would not turnover the Vehicle without evidence of Debtor's ownership or interest and that it would be filing the Motion in the near future to determine the extent of Debtor's property interest in the

Vehicle. On her part, Debtor did not file an adversary proceeding nor a motion seeking an emergency order for turnover. On September 29, 2015, Debtor provided a brief affidavit from Yeargin stating that Yeargin had "bought [the Vehicle] for [Debtor] and she has made all payments since . . . [and that] after all payments are made the title will go into [Debtor's] name." Just days later on October 2, 2015, the Bank filed the detailed Motion, alleging that Debtor did not appear to have a property interest, and requesting a hearing on the Motion on the next available court date of November 3, 2015.

It appears that the Bank's refusal to turn over the Vehicle upon demand was based in part on the information Debtor provided, which reflected both title ownership and insurance in Yeargin's name, and which was inconsistent with other statements asserting Debtor's property interest. The Certificate of Title and insurance document did not include Debtor as an interest holder in the Vehicle.  Further, while the Bank was provided a brief affidavit from Yeargin, Debtor's stepmother, indicating her arrangement with Debtor, such a statement could fairly be viewed as self-serving or biased. Debtor also provided bank statements that reflected that Debtor made eight payments on the loan; however, it is not uncommon for loan payments to be made by family members other the owner. In addition, Debtor had possession of the Vehicle at the time of repossession, but it is also not unusual for a parent's vehicle to be used and possessed by a child. Within three days of receipt of this additional information from Debtor, the Bank timely filed a request for a hearing before this Court. At this point, there appeared to be a reasonable question as to whether Debtor possessed an interest in the Vehicle and whether it was property of the estate. Therefore, the determination of the extent, if any, of Debtor's interest in the Vehicle as requested under the Motion was an appropriate "other relief" under the holding in <u>Jennings</u>. While the November 3, 2015 Motion hearing was not

expedited by either party, it is noteworthy that the Motion hearing was then continued to November 17, 2016 due to Debtor's counsel plans to be out of the country on November 3.[6] In addition, it was Debtor that sought a reconsideration of the Court's order on the Motion that determined that Debtor had an equitable interest in the property, which further delayed the finality of the order. Therefore, the Court finds that in these circumstances, the Bank, by selecting the earliest self-scheduling hearing date available, took sufficient steps to expedite the determination of Debtor's property interest in the Vehicle.

In general, in circumstances where a debtor asserts a right to turnover or the protection of the automatic stay for an undisclosed, undocumented and unrecorded equitable interest in property, it seems that the better practice is for the debtor or trustee to initiate, as an emergency matter, a turnover request by an adversary proceeding or by motion. In such instances, the debtor should demonstrate the facts or evidence establishing the interest (in this case, the intent regarding ownership), which is often peculiarly within the knowledge and control of the debtor. To do otherwise, would unfairly place the duty to disprove the debtor's interest on the creditor. See In re Caddarette, 362 B.R. 829, 835 (Bank. N.D. Ohio 2006) ("In many instances, a debtor's vehicle will be their most valuable asset of personal property, thereby providing a large incentive to the debtor for the assertion of an undisclosed third-party interest in the vehicle, whether a trust, security interest or otherwise. . . . Recognizing an undisclosed beneficial interest in a motor vehicle, therefore carries with it the real potential to encourage false claims, or at the very least encourage litigation . . . .").

---

[6]    On the eve of the November 17, 2015 Motion Hearing, Debtor provided to the Bank a Verification of Coverage from GEICO Insurance, which stated that Debtor was a co-insured on the Vehicle. As this insurance coverage was provided on the eve of a contested hearing, the parties deferred to the Court's determination of the Motion.

*Violation of Stay*

Under the facts of the case, Debtor asserts that the Bank willfully violated the automatic the stay by failing to turn over the Vehicle upon her demand. Section 362(k)(1) states "[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." To obtain a recovery under § 362(k), "a plaintiff must show (1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was willful, and (3) that the plaintiff was injured by the violation." Houck v. Substitute Trustee Services, Inc., 791 F.3d 473, 484 (4th Cir. 2015). In addition to affirmative acts taken in violation of the stay, a party's inaction may also result in a willful violation of the automatic stay. See In re Weatherford, 413 B.R. 273; 287–88 (Bankr. D.S.C. 2009) (finding that creditor's continued retention of certain payments made by the debtor on a void judgment was a willful violation of the stay).

In the present matter, upon the filing of Debtor's petition, the § 362 stay went into effect. In the Court's prior Order, issued after the contested evidentiary hearing held on November 17, 2015, the Court determined that Debtor has an equitable interest in the Vehicle as a result of the resulting trust with Yeargin. Under South Carolina law, the resulting trust relates back to the time that the Vehicle was purchased in November 2013. See In re Pfister, 749 F.3d 294, 299 (4th Cir. 2014) ("A resulting trust arises at the time of the purchase, or not at all."). However, while the Debtor's equitable interest relates back to the purchase transaction for the Vehicle, this interest was not fully recognized until this Court's determination of the Motion.

12

For the purposes of summary judgment, the Bank does not dispute its failure to immediately turn over the vehicle.[7] Therefore, the key question is whether the Bank's actions were a willful violation of the stay under § 362(k)(1). The Fourth Circuit has defined a willful violation of the automatic stay as occurring when a creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in spite of it. See Budget Serv. Co. v. Better Homes of Virginia, Inc., 804, F.2d 289, 293 (4th Cir. 1986). The determination of whether an act is a willful violation is an objective analysis as the Court does not consider the subjective intent of the creditor. See Warren v. Dill (In re Warren), 532 B.R. 665, 663 (Bankr. D.S.C. 2015) ("[A] creditor's belief that the automatic stay does not apply to his conduct is immaterial to the question of whether a stay violation has occurred, even if such belief is based on advice of counsel.").

It is undisputed that the Bank had knowledge and notice of the bankruptcy filing when Debtor's counsel contacted it on September 25, 2015.  The essential issue in this matter is, based on the undisputed facts, whether the Bank had the requisite knowledge of Debtor's property interest in the Vehicle such that its retention of the Vehicle until the Court made its determination constituted a willful violation of the stay.

Neither party has cited case law addressing a similar factual situation as the present matter, nor does it appear that this Court has previously addressed an alleged violation of the automatic stay involving equitable interests in property determined after the filing of the bankruptcy petition.

---

[7]     The Bank indicated in its motion for summary judgment that it reserves the right to contest other elements of a § 362(k)(1) at a future proceeding in adversary proceeding; however, for the purposes of this summary judgment matter, its arguments are based solely on whether its actions were willful.

As an initial consideration, the Court notes that under South Carolina law, a certificate of title creates a rebuttable presumption that a vehicle's owner is the person reflected on the title, and this presumption can be overcome only by "evidence that the true owner of the vehicle is a person other than the one in whose name the vehicle is registered." Tollison v. Reaves, 277 S.C. 443, 445, 289 S.E.2d 163, 164 (1982); see also S.C. Code. Ann § 56-19-320 (2016) ("A certificate of title issued by the Department of Motor Vehicles is prima facie evidence of the facts appearing on it."). In this case, the Vehicle's Certificate of Title created a presumption that Yeargin was the owner of the Vehicle, which could only be rebutted upon Debtor's presentation of evidence that she had an ownership interest.

Further, the burden to demonstrate an equitable interest lies with the party claiming the property interest. See 63C Am. Jur. 2d Property § 40, Westlaw (database updated Nov. 2016) ("The burden of proving title or ownership of real property is upon the party alleging it, and the burden of rebutting a prima facie showing of title rests upon the party attacking the title shown.").

In this case, the Debtor arranged for and benefitted by the structure of the loan transaction and arrangement with Yeargin, which although resulting in an equitable interest, do not appear to have been sufficiently documented or disclosed to the Bank. The information provided by Debtor in connection with the turnover demand was clearly inconsistent in that some supported Yeargin's ownership and other information indicated that Debtor may have an interest. In response, the Bank timely requested a determination by the Court.

In the Court's experience, not every party that claims an equitable interest successfully establishes that interest. This Court has held in many cases that a debtor claiming such an interest has failed to establish it. See, e.g., In re Lee, C/A No. 10-07833, slip op. (Bankr.

14

D.S.C. Feb. 28, 2011) (finding that the debtor failed to demonstrate an equitable interest to permit valuation of the creditor's secured claim in debtor's proposed chapter 13 plan); In re Brittain, 435 B.R. 318 (Bankr. D.S.C. 2010) (finding that debtor did not have an equitable interest pursuant to a resulting trust); In re Johnson, 429 B.R. 540 (Bankr. D.S.C. 2010) (finding that debtor's possession of personal property was insufficient to establish an equitable interest in the property to trigger the automatic stay).

The Bankruptcy Court for the Eastern District of Virginia has noted that in circumstances when a party lacked sufficient knowledge of a debtor's equitable interest in the property, the party does not have the requisite knowledge of the automatic stay to constitute a willful violation of the stay. See Wellington Apartment, LLC v. Clotworthy (In re Wellington Apartment, LLC), 350 B.R. 213, 248 (Bankr. E.D. Va. 2006) ("There is no indication that [the defendants] knew that the actual owner of the Wellington Apartments in Newport News, Virginia was [the debtor], and therefore, they cannot be held to the knowledge of its Chapter 11 proceedings in the Bankruptcy Court."). In this matter, this Court agrees with the reasoning of Wellington.[8]  Without the requisite knowledge of the existence of debtor's property rights in the subject property, a creditor's act, whether intentional or unintentional, cannot be a willful violation of the stay.

---

[8]     In situations where there is no certificate of title, deed or other written record of ownership, the creditor must have a fair opportunity to identify that the debtor has an actual property interest covered by the automatic stay. This is particularly true in instances when the debtor's interest is undisclosed and undocumented, and therefore can easily be subject to false representations by related parties. To proceed otherwise would inappropriately shift the burden of demonstrating the extent of the equitable interest from the debtor to the creditor, a party often without sufficient access to or control of the facts critical to the determination.

15

For these reasons and based on the undisputed facts, the Court finds the Bank did not

willfully violate the automatic stay in this case. The Court hereby grants the Bank's motion

for summary judgment and denies Debtor's motion for partial summary judgment.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
December 16, 2016


**FILED BY THE COURT**
**12/16/2016**



US Bankruptcy Judge
District of South Carolina

Entered: 12/16/2016